## SHABEL M. REYNOLDS v. PETER SMITZ.

EXECUTION OF NOTES IN PURSUANCE OF A CONTRACT ALLEGED TO HAVE BEEN CHANGED—EFFECT.

Where, in pursuance to the terms of a contract for the sale of land, certain notes are to be executed for the balance of the purchase price, and it is afterwards claimed by the plaintiff that such notes were not executed according to the terms of such contract, but that defendant had included and written into the notes certain provisions as to interest, contrary to the terms of the contract: *Held*, that the question to be determined by the jury, was whether this contract was changed after it was executed, by the mutual consent of the parties, and before these notes were executed and signed by the parties; and if so changed by the mutual consent of the parties so that the notes actually expressed their contract and understanding, then the plaintiff cannot recover. But, if on the other hand, it was not so changed, then the plaintiff would be entitled to recover for any loss or damage caused by such unauthorized change, it being admitted by the defendant that he had sold the notes to an innocent purchaser.

ERROR to the Court of Common Pleas of Fulton county.

KING, J.

This action was brought by Smitz in the court of common pleas to recover of Reynolds the sum of $245, which it is alleged in the petition the defendant below had fraudulently included and written into certain notes by way of interest, which plaintiff had signed and given in ignorance of their terms.

It seems that Smitz bought of Reynolds August 27, 1895, by a written contract, a tract of land and certain personal property situated thereon and described in the contract. Reynolds reserved in the contract the use and occupation of the buildings and certain other privileges in the premises, until March 1st, of the following year, and Smitz agreed in the contract to pay $100 cash (which was done), $1,500 on September 23, 1895, and the balance $4,168—on or before September 23, 1905, with interest at seven per cent. from March 1, 1896, to March 1, 1902, and eight per cent. from and after March 1, 1902, on all sums not paid, and all interest payable annually. It was further agreed that on payment of $1,500 in September, 1895, Reynolds was to make a warranty deed of the premises to the purchaser, who was to give notes for the unpaid purchase money, secured by a mortgage upon the premises. On September 25th, instead of the 23d, the parties met and executed respectively the deed and the notes and mortgage. These latter as written and signed varied somewhat from the terms of the contract in this: that they drew interest from date, to-wit: September 25, 1895, instead of March 1, 1896. The amount of the deferred payments was divided into ten notes, due yearly after March 1, 1896, the last one coming due March 1, 1906; and and the notes coming due March 1, 1903, and thereafter, being four in all, drew interest at eight per cent. per annum from date, payable annually. Smitz in his petition below claimed that these changes were without his knowledge or consent, and were written in fraudulently.

It is conceded that the notes do not follow the terms of the contract, and that the difference to the plaintiff is $245 at least; in other

words, that he will be obliged to pay that sum when he pays the notes more than he would if the contract originally entered into had been followed. It is denied by the defendant that the change was either fraudulently or mistakenly made, but, he avers, it was made by the agreement and the consent of the parties.

This case was tried to a jury, and a verdict for the plaintiff below rendered for $245. The plaintiff in error asks us to reverse this, because it is not sustained by the law or the evidence, and because of misconduct of plaintiff's counsel in his argument to the jury.

As above suggested, the petition alleges that the change was made by Reynolds, either alone or acting in collusion with the person whom he employed to write the papers, and was fraudulently made. This the answer denies; and it is urged here that the evidence does not support allegation in the petition, and if it does not, that the verdict must fail. It is also urged, and it is true from an inspection of the record, that the charge of fraud was ignored by the court in his instructions to the jury. We do not think the evidence supports the allegation in the petition that this change in the contract was fraudulently made; but is that the only charge that could be submitted to the jury under these pleadings? The court in his charge says:

"Now the question for you to determine then, gentlemen, is, Was this contract changed after it was executed, by the mutual consent of the parties, and before the deed, mortgage, and notes were executed and signed by the parties? If it was changed by the mutual consent of the parties so that the notes actually expressed their contract and understanding, then, of course, the plaintiff cannot recover. But if, on the other hand, it was not changed, then the plaintiff would be entitled to recover, for the reason that it is conceded on behalf of the defendant that he has sold these notes to an innocent purchaser, and that they were executed."

That is substantially all that is said on the issue of fraud or mistake by the court, and it was not objected to or excepted to by either party. The question then submitted to the jury is, Was the change made by agreement of the parties? If by agreement, then they are bound; but if not, then plaintiff could recover the amount of the difference. We are inclined to the view evidently entertained by the defendant's attorneys at the time of the trial, that this charge is correct. It submitted the real question in the case, and one that might be submitted, notwithstanding the petition alleges a fraudulent change.

If our conclusion here is correct, then the verdict is supported by the evidence. There is a conflict in the evidence about whether the change was made by agreement or otherwise; but we think, after an inspection of the papers showing the change from the contract to the provisions of the notes and mortgage, that the burden would fall on the defendant below to show that this change was pursuant to an agreement made by and binding upon the parties. This burden we think the defendant failed to sustain. It is suggested that other changes were made from the written contract which were favorable to the plaintiff below; that the time of payment of the last note is fixed some six months later by the note than the extreme limit named in the contract. This is true, but for such an extension of time the defendant was to receive interest at eight per cent. The contract provided that the purchaser should pay the deferred payment, to-wit: $4,168, on or before September 23, 1905. Thus by his option he need not pay under the con-

tract any of the purchase money until 1905 ; yet by the notes he bound himself to pay the greater proportion of the purchase money before 1905, and is only permitted an extension of six months upon a single payment of $600. This hardly creates a consideration for the addition of $245 of interest money to the terms of the contract.

Reynolds was to have possession of the farm after the execution of the deed to the purchaser until March 1, 1896. That is a pertinent reason for making the notes draw interest from that date. But there are indications that the scrivener who drafted the notes and mortgage intended to follow the contract. The notes are dated the day they are signed—September 25th—but all of them are written payable in a given number of years after March 1, 1896. That is the date from which computations of time are made in all the notes. And the maker promises to pay the same named with interest at seven or eight per cent. per annum, payable annually. This would seem to indicate that in the mind of the person who drafted the notes the interest would date from the same date that he had fixed to reckon the running of the note from. Again the contract recites that all the purchase money unpaid on September 23, 1902, shall draw interest at eight per cent. This is interpreted in the drafting of the notes by making only those which come due after that date, to-wit : the last four, draw interest at eight per cent. from their date. This is evidently a misinterpretation of the provisions in the contract ; but from the form of it, it would look as if those who drafted the notes intended or thought it would have the same effect as the contract.

So this change to our minds seems to be the result of a mistake in understanding and correctly interpreting the contract, and in carrying that interpretation into the notes and mortgage, and that the court below correctly submitted the matter to the jury to pass upon the single question of fact, whether the parties had agreed to an alteration of the terms of the contract, and if they had not so agreed, then the contract under which this land was sold and of which the notes and mortgage were simply acts in execution, should determine the rights of the parties.

Second. We do not think that the counsel have saved the objection made to the remarks of the attorney of the plaintiff below on the trial to the jury. We probably should add that if properly saved, we do not think those remarks were prejudicial.

So, for these reasons, the judgment will be affirmed.

*Handy & Ogan* and *J. Q. Files*, for defendant in error.

*G. B. Heise* and *J. W. Roseborough*, for plaintiff in error.

## DEFECTIVE SIDEWALKS—PROOF.

[Hamilton Circuit Court, 1899.]

Court held by King, Haynes and Parker, JJ., of the Sixth Circuit.

### CINCINNATI (CITY) v. JENNIE M. FRAZER.

1. DEFECT MUST HAVE EXISTED SUCH A TIME THAT AUTHORITIES COULD HAVE REPAIRED IT.

    To render the city liable by constructive notice of a defect in sidewalk, which results in an injury to one walking over it, it must be shown that the defect had existed for such a length of time that the city authorities would, by the exercise of ordinary care, have known of its existence and could have repaired it.

2. CITY MUST BE GUILTY OF NEGLIGENCE, ACTUAL OR CONSTRUCTIVE.

    As a basis for recovery in such a case the jury must first find that the city was guilty of negligence, either in not ascertaining the defect, or in not repairing it after having acquired knowledge of the defect, actual or constructive.

3. PEDESTRIAN NEED NOT GO ASIDE, UNLESS REASON TO APPREHEND DANGER.

    One cannot be charged with negligence in not taking to the street or to the opposite sidewalk, unless he had reason to apprehend danger at the place where the defect existed.

4. BURDEN OF PROOF TO REMOVE PRESUMPTION OF NEGLIGENCE RAISED BY PLAINTIFF'S PROOF.

    If the testimony of the plaintiff raises a presumption of contributory negli‍gence, the burden is upon him to remove this presumption.

KING, J.

The verdict in this case is supported by sufficient evidence, and there is no error found in the rulings upon the evidence offered at the trial. We think, however, the court in its definition of constructive notice in the charge, erred to the prejudice of the city in saying in effect, that if the crossing in question had been out of repair for such a time that the city might or could have repaired it, that would amount to constructive notice to the city of the defect. The rule is, that if the defect is shown to have existed such a length of time that the city authorities, by the exercise of ordinary care, would have known of its existence and could have repaired it, then the city is charged with constructive notice of such defect.

Again, that part of the charge of court, excepted to on page 153 of the record because in stating to the jury the circumstances under which the city will be held liable in damages, fails to state as a basis for such recovery that the jury must first find that the city was guilty of negligence, i. e., a want of ordinary care, either in not ascertaining the defect and repairing it or in not repairing it after it had acquired knowledge thereof, actual or constructive.

The expression of the court, found on page 154, as to the definition of "a preponderance of the evidence" is not strictly accurate, but there is no specific exception to this. With the above exceptions we think the charge is substantially correct.

Nor do we find any error in the refusal of the court to submit to the jury the interrogatory requested by the defendant below, as an answer to the question, "Could she easily have avoided the danger by walking in the street or on the opposite crossing?" would not have been controlling. It is patent that by walking in the street or on the opposite side she would have avoided the danger from the defect in the crossing, but

she would not be bound to take the opposite side of the street unless she had reason to apprehend danger at this place.

We think the court should have given the two first requests contained in the record, on page 161, submitted by counsel for the city. The first of these was not given in the charge, although its opposite is contained in the charge. We would not reverse this case for the refusal of the court to give that request but take occasion to say that we think it was proper.

The second request states a rule of law well settled in this state, to-wit: That if the testimony of the plaintiff below raises a presumption of contributory negligence, the burden is upon her, the plaintiff, to remove that presumption. That is merely stating a rule of law that the plaintiff is bound to show by her case, by her evidence, that she was in the exercise of ordinary care and that her want of such ordinary care did not contribute to her injury.

There is no other issue of contributory negligence in the case as the answer does not tender such an issue.

For the failure, therefore, of the court to give these two requests, and for the errors in the charge pointed out, this judgment is reversed and the cause remanded for a new trial.

*Corporation Counsel,* for plaintiff in error.

*Amos Dye* and *S. N. Maxwell, contra.*

---

## CONTRACT—EVIDENCE.

[Fulton Circuit Court.]

### ANSON W. VAN ARSDALE v. LEVI W. BROWN.

1. PARTIES TO A WRITTEN CONTRACT CANNOT TESTIFY AS TO THEIR UNDERSTANDING OF IT.

    In an action based upon a written contract, it is incompetent for the parties to such contract to testify as to what was their understanding of it; and it is especially incompetent to allow them to testify to an understanding which clearly contradicts the plain terms of such contract, and, therefore, it is error to admit such testimony.

2. A STIPULATION TO TRANSFER STOCK, IMPORTS THAT THE STOCK IS OF SOME VALUE.

    A stipulation or agreement to transfer the stock of a corporation, whether solvent or insolvent, imports that the stock is of some value, and for the purpose of making a binding contract it is not important how valuable.

3. INTERPRETATION OF CONTRACT AS TO TIME OF PAYMENT.

    Where the owner and holder of stock in a corporation agrees to transfer such stock to a person designated by the buyer, and the latter agrees to pay for the same in installments "at his option as to time" after a date on which such installments begin to draw interest, means that such installments are to be paid within a reasonable time after the date named when such installments begin to draw interest.

4. QUESTION OF REASONABLE TIME—BY WHOM DECIDED.

    Whether the question as to what is a reasonable time is to be ascertained by the jury or as in this case, by the court, from the facts, or whether it is a question of law, depends upon the nature of the transaction involved in the contract.

Van Arsdale v. Brown.

5. PLAINTIFF WAS ENTITLED TO RECOVER.

The plaintiff in this case was entitled to recover upon this contract when he proved that he had transferred the stock to the defendant, regardless of whether the stock was valuable or not, and regardless of whether it was understood or agreed orally that payment should be made when the company was making money and this evidence admitted, tended to vary the terms of the contract sued upon.

KING, J.

This action was brought in the court of common pleas, to recover upon a certain contract, called in the petition a writing obligatory, the material points are in these words:

"WAUSEON, OHIO, January 1, 1895."

"Whereas the organization or venture of the Hall Medicine Company has thus far been unsuccessful and whereas Anson W. Van Arsdale has lost some money thereby; now therefore in consideration of the said Van Arsdale making over or causing to be made over, to my son, Charles N. Brown, all the right, title and interest he or his wife may have in the company and all its property, except one share of stock of the same, of the nominal value of fifty dollars, held by him or his wife, I promise to pay, at my option as to time after one year, three hundred and fifty dollars, with interest after January 1, 1896, and also under the same conditions and the same option as to time of payment, after two years I agree to pay Van Arsdale the further sum of three hundred and fifty dollars with interest after January 1, 1897."

There is a further provision in this contract that if the business is successful Van Arsdale shall have seventy-five dollars worth of medicine manufactured or stock to the par value of one hundred dollars.

The petition further averred that on June 2, 1897, defendant paid forty dollars and on September 16, 1897, twenty-five dollars, to apply upon the said contract.

The answer admitted that defendant signed the writing and admitted the two several payments, but denies all of the other allegations of the petition. There is a cross-petition or counter-claim in the answer, which is unnecessary to notice.

The trial of the case resulted in a judgment for the defendant, which the plaintiff seeks here to reverse. The case was tried to the court below without a jury and was tried and decided upon the theory as indicated by the rulings upon the evidence offered, and by the decision of the court that it was incumbent upon the plaintiff to allege and prove that he performed the conditions of the contract on his part, by turning over the stock in accordance with its requirements, and that the stock agreed to be transferred was of value. It will be noticed that there is no allegation in the answer that the stock was valueless. The answer simply denies that the plaintiff has performed the conditions on his part to be performed. In the course of the trial defendants being upon the witness stand was asked this question, which appears on page 35 of the bill of exceptions: "What, if any other talk did you have with him (plaintiff) at any time since January 1, 1895, about the company, and what was the conversation?" This question was objected to and overruled and plaintiff excepted. A. "Why, we talked a part of the time about the prospects of the company and about its getting on its feet and getting up and making money."

Some further testimony follows this along the same line, and then this question and answer appears on page 36: "Was there any talk at

any time about your not paying the money until the company got on its feet?" This question was objected to, overruled, and excepted to by the plaintiff. A. "Why, at the time this was made and given, a talk was had between Mr. Van Arsdale and myself about the company. I said to Mr. Van Arsdale, put it in that way, that he should have what money he put in there. Pending the re-habilitation of it, it was turned over to a brother-in-law and I·think he perfectly well understood." Q. "Not what you think?" A. "Well, I understood it. Our conversation was such that it was my understanding. I understood that when the money was made out of ·the company, that is, if it could be made out of the company that he was to have his pay, but if it could not be made, after the rehabitation of the company, I was to pay it." There is considerable more in his examination along this line.

There was no defense set up in the answer of a different agreement having been made subsequent to the one sued upon, and as I have already stated no defense that the conditions of the promise to pay the seven hundred dollars had failed.

We are of opinion that the court erred in the·admission of the testimony which I have read, to which there are objections. There is considerable more of the testimony that if objected to, should have been excluded. It was incompetent for the parties to testify what was their understanding of this contract and especially incompetent to testify to an understanding which clearly contradicts its plain terms.

It was claimed, by the defendant at the trial, that this contract was not binding upon him, because there was no time fixed when he should pay the seven hundred dollars. The stipulation is that he was to pay it at his option as to time, after a date named, from which date he was to pay interest on the principal sum.

The court below construed this promise to pay as conditional, that is, dependent upon the promise of Van Arsdale to make over and transfer his interest in the company and the stock of the company.

We are clearly of the opinion that the promise of Brown was an absolute promise to pay money and if conditional, then only conditional upon the transfer of Van Arsdale's interest in the company and the stock. The only issue in the case then upon the pleadings was whether the plaintiff had performed his ageeement to transfer his interest in the company.

There is no issue as to whether the stock was valuable or not, and no issue whether there was a subsequent agreement. A stipulation or agreement to transfer the stock of a corporation, whether solvent or insolvent imports that the stock is of some value, and for the purpose of making a binding contract it is not important how valuable. The parties in this contract incorporated in it their knowledge that the company was not making money, and that the plaintiff had been losing money in the venture. This seems to be a recital or statement of the reason for the sale of the plaintiff's interest and with that understanding and knowledge defendant promised and agreed to pay $700.00 for that interest. It is true he says " at his option as to time." That means nothing, however, more than a reasonable time after the date named. The date named as to the first installment is one year and as to the second installment, two years from the date of making the contract. A reasonable time then, after the expiration of these periods these several installments would become due. An authority to this fact is the case of Lewis v. Tipton, 10 O. S., 88. The court say in that case on page 90 : " The

Van Arsdale v. Brown.

payee certainly parted with its value to secure the promise, and the maker not only admits this, but promises to pay interest thereon while the payment is foreborne. If the convenience of the maker alone is to be cousulted, he might never find it altogether convenient to pay, and the construction leads to results certainly not contemplated by the parties when the note was written.''

Whether a reasonable time is to be ascertained by the jury or as in this case, the court, from the facts, or whether it is a question of law, depends upon the nature of the transaction involved in the contract. We have had occasion to discuss this question in the case of Ashley v. Walker, 8 Ohio Circ. Dec., 285. The plaintiff in this case was entitled to recover upon this contract when he proved that he had transferred the stock to the defendant, regardless of whether the stock was valuable or not, regardless of whether it was understood or agreed orally that payment should be made when the concern was making money and this evidence admitted tends to vary the terms of the contract sued upon and was therefore improperly admitted.

It is insisted here that the judgment was given against the weight of the evidence. We have carefully read the entire bill of exceptions to ascertain whether that be so. It is a strong circumstance almost amounting to a presumption that the defendant would have been unlikely to enter into this contract and turn it over and deliver it to the plaintiff, containing his promise to pay $700.00, without requiring the execution by the plaintiff of his promise contained in the contract. That is one strong consideration in favor of the plaintiff's claim. Again, after the expiration of these periods of time named in the contract, plaintiff placed his claim in the hands of an attorney for collection, who testifies that he talked with the defendant two or three times and on each occasion defendant promised to pay, but sought to have more time given him in which to pay.

On neither of the occasions did he claim that the plaintiff had not performed his contract, nor did he on either of them deny his liability to pay the $700.00. More than this the defendant did make two payments during the year of 1897, and after the two installments had become due. He turned the money over directly to the plaintiff and on both occasions promised to pay the balance when he could, and on neither occasion claimed that he was not liable to pay because the plaintiff had not performed his part of the contract.

The plaintiff testifies positively to his performance of the contract before the delivery of it to him. He is corroborated in this by his wife, so that the plaintiff's evidence is corroborated by the circumstances of the case, and this is not disputed, save and except by the evidence of the defendant.

When the defendant was first called as a witness, he was asked if he had these certificates of stock, and he answered that he did not think that he had them. That he did not have them unless they were in a book which he then and there had in his possession. On looking in the book he failed to find them, and concludes that he did not have the certificates of stock.

He afterwards, on further examination, testifies positively that the stock was not turned over to him, but we think the weight of the evidence would have authorized a judgment in favor of the plaintiff in this case, and that the court below should have so found upon the evidence and the law. For the reason that the court erred in the admission of the

evidence referred to and because the judgment is contrary to the weight of the evidence, it is reversed.

*Judge Handy* and *Handy & Fuller*, attorneys for plaintiff in error. *Ham & Ham*, attorneys for defendant in error.